# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

WALTER LAWSON,           :
                              :
        Plaintiff,          :
                              :              PRISONER
v.                           :    Case No. 3:02cv1097 (MRK)
                              :
PAT WOLLENHAUPT,     :
                              :
        Defendant.     :

## MEMORANDUM OF DECISION

Walter Lawson, a *pro se* plaintiff presently confined at Northern Correctional Institution in Somers, Connecticut, brought this 28 U.S.C. § 1983 action against defendant Patricia Wollenhaupt, R.N., in her personal and official capacities under the Eighth and Fourteenth Amendments. On July 24, 2003, defendant filed a motion for summary judgment. On August 6, 2003, the Court issued a notice [doc. #31] ("Notice") informing plaintiff of his obligation to respond to the motion, as required by *McPherson v. Coombe*, 174 F.3d 276 (2d Cir. 1999) and *Vital v. Interfaith Medical Ctr.*, 168 F.3d 615 (2d Cir. 1999). To date, plaintiff has not responded to the motion, while defendant has satisfied her burden under Fed. R. Civ. P. 56. Having considered defendant's moving papers as well as the pleadings previously submitted by plaintiff, including the documents attached to those pleadings, the Court GRANTS Defendant's Motion for Summary Judgment [doc. #28].[1]

---

[1] The Second Circuit has cautioned that "[i]t is clear that even when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If it has not, summary judgment is inappropriate, for no defense to an insufficient showing is required." *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir. 2001).

I.

A.

Plaintiff has submitted a number of requests to the Court since the inception of this case. On November 13, 2002, plaintiff filed a Request to Present Evidence [doc. #15] seeking the Court's permission to submit evidence, pursuant to Federal Rule of Evidence 402, to support his claim. Plaintiff attached several inmate grievances to the Request. On December 13, 2002, the Court denied the request without prejudice [doc. #18] on the ground that since no trial date had been set, the request was premature. However, the ruling informed plaintiff that he could submit his evidence at trial or attach it to a memorandum in support of or in opposition to a motion for summary judgment.

On February 7, 2003, plaintiff filed a Motion to Certify Exhaustion of Administrative Remedy [doc. #21], to which he appended an affidavit reciting his efforts to bring his complaints to the attention of prison officials, and several inmate grievance forms. In a ruling [doc. #24] dated April 16, 2003, the Court denied plaintiff's motion as premature, since defendant had not as yet moved for any relief on the ground of failure to exhaust. The Court explained that plaintiff was not required to "negate an affirmative defense before the defendant presents evidence that the defense may be warranted." The Ruling also explained that plaintiff was free to present any evidence of exhaustion of administrative remedies in opposition to any motion defendant may file raising the issue. Thus, including the August 6, 2003 Notice [doc. # 30], plaintiff was informed on three separate occasions of his opportunities to present evidence to support his claims and to oppose any summary judgment motion filed by defendant.

Roughly seven months have passed since defendant filed her Motion for Summary

2

Judgment and plaintiff still has not filed any pleadings in opposition to the motion, despite notice

of the consequences of failing to submit responsive pleadings or evidence.  This Court's Notice to

the plaintiff explicitly informed plaintiff that "plaintiff may not simply rely on his complaint."

Notice, at 1.  The Notice also explained that plaintiff must submit affidavits based on personal

knowledge or other documentary evidence to show that there are issues of material fact for trial;

that plaintiff was obligated by Local Rule 56(a)2 to include in his opposing papers a Local Rule

56(a)2 Statement indicating whether plaintiff admits or denies each statement of material fact

recited in defendant's Local Rule 56(a)1 statement [doc. # 30] ("Def.'s Statement")[2]; that

plaintiff's failure to file a Local Rule 56(a)2 statement would result in all facts set forth in

defendant's Statement being deemed admitted; that the court rules and case law require plaintiff

to file a response to defendant's motion for summary judgment within 21 days of the filing date

of the motion for summary judgment; that the Court may grant the motion for summary judgment

absent objection if plaintiff failed to respond within the 21 days; and that if summary judgment is

granted against plaintiff, there would be no trial.

The Notice was more than sufficient to provide plaintiff with notice of the consequences

of a failure to oppose defendant's summary judgment motion.  *See Champion v. Artuz*, 76 F.3d

483, 486 (2d Cir. 1996).  The facts contained in defendant's Statement are therefore deemed

admitted by plaintiff and shall be treated as true for the purposes of this motion.  *See LeSane v.

Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 211 (2d Cir. 2001); *see also* D. Conn. L. Civ. R. 56(a)1.

On the other hand, the Court is not required by the Local or Federal Rules or by case law to take

---

[2]  Current Local Rule 56(a)1 was formerly numbered 9(C)(1), and accordingly, the
statement defendant filed is captioned, "The Defendant's Local Rule 9(C)1 Statement" [doc. #30]
("Def.'s Statement").

3

all allegations in the Amended Complaint as true or to draw inferences therefrom in plaintiff's

favor. *See Champion,* 76 F.3d at 485. That said, in connection with the Motion for Summary

Judgment, the Court has reviewed the inmate grievance forms and the affidavit plaintiff filed in

support of his Motion to Certify Exhaustion of Administrative Remedy.

B.

Defendant's Statement recites the following facts.[3] Plaintiff is an inmate under the

custody of the Connecticut Department of Corrections ("DOC") and has been confined at

Northern Correctional Institution ("Northern") in Somers, Connecticut from July 25, 2001 to the

present. Def's Statement, ¶¶ 1,2. Defendant is employed as the Nursing Supervisor at Northern,

and her responsibilities include supervision of inpatient and outpatient medical care. *Id.,* ¶ 3.

Defendant does not make dietary decisions, nor is she authorized to order special or modified

diets for inmates. *Id.,* ¶ 6.

DOC inmates are served the "master menu" diet or the meatless "common fare" diet, both

of which provide inmates with 2700 calories per day. *Id*., ¶ 4. Both meal plans were designed by

Robert DeVeau, Director of Food Service and approved by Dr. Edward Blanchette, M.D.,

Director of Clinical Services and chief physician for the DOC. *Id.*, ¶ 5. Therapeutic diets are

available for inmates who are diabetic or have cholesterol problems, and any DOC physician is

authorized to order these diets. *Id.,* ¶ 7. An inmate can seek a modified diet because of a severe

reaction to certain foods, but in that event, the request for the modified diet must be prepared by

---

[3] *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment
[doc. #29]; ("Def.'s Mem. in Supp. of Mot. for Sum. J."); defendant's Local Rule 9(C)1
Statement [doc. #30] ("Def.'s Statement"); Affidavit of Patricia Wollenhaupt, *id.*, Exhibit B
("Wollenhaupt Affidavit"); Affidavit of Robert DeVeau, *id.*, Exhibit C ("DeVeau Affidavit");
Affidavit of Joseph Locasto, *id.*, Exhibit D ("Locasto Affidavit").

a physician and approved by Dr. Blanchette. *Id.,* ¶ 10. On November 7, 2001, plaintiff was approved for the common fare menu, which includes eggs as a specific menu item for some meals. *Id.*, ¶¶ 8, 11. Eggs are not ordinarily served as the sole item on the menu, and inmates have the option of supplementing the food offered in the common fare menu by purchasing alternative foods in lieu of eggs at the commissary. *Id.,* ¶ 11. For example, on January 8, 2002 (the same month plaintiff filed a grievance about alleged deficient caloric intake), plaintiff purchased the following food items from the commissary: Slim Jims, peanut butter, pepperoni slices, squeeze salsa, rice and red beans, hot sauce, Spanish rice, butter cookies, iced oatmeal cookies, cinnamon rolls, honey buns, barbecue corn chips and saltines. *See* Attachments to LoCastro Affidavit.

Plaintiff submitted several inmate grievances seeking a modified diet eliminating eggs from his meal trays, in which plaintiff claimed that he suffered allergic reactions to eggs including hives and a tightness in his throat. Def's Statement, ¶ 15. However, plaintiff's medical file does not document any allergy to eggs; nor was defendant ever informed by a physician that plaintiff was allergic to eggs or otherwise had a serious food allergy or that he required a special diet. *Id.,* ¶¶ 13, 14, 17. Defendant responded to plaintiff's grievances by instructing plaintiff not to eat the eggs when they were served. ¶ 16. In addition, on January 11, 2002, she provided plaintiff with a memorandum from Dr. Blanchette and Robert DeVeau setting forth DOC's policy regarding special diets. *Id.,* ¶ 18. On March 12, 2002, defendant informed the plaintiff that "I do not control the state diet." *Id.*, ¶ 19. On April 9, 2002, defendant provided plaintiff with the same information in response to another grievance by plaintiff regarding eggs and informed plaintiff that any deviation from the standard diet would have to be approved by Dr. Blanchette.

5

¶ 20.

Inmates at any DOC facility are free to apply for a "sick call," during which they can meet with a staff physician to address any health or food concerns. *Id.*, ¶ 21. Any DOC physician who believes that an inmate needs a modified or special diet may contact Dr. Blanchette and request such a diet for the inmate. *Id.*, ¶ 22. Plaintiff was fully informed of the appropriate procedure to follow if he wished a deviation from the standard diet, but to date, plaintiff has not availed himself of that process. *Id.,* ¶¶ 23, 24.

By Complaint dated May 15, 2003 [doc. #3], plaintiff commenced this action against defendant. On May 19, 2003, plaintiff filed an Amended Complaint [doc. #32] ("Am. Compl.") which sets forth two counts. In the first count, plaintiff alleges that defendant violated his Eighth Amendment rights by: 1) refusing to grant him a modified diet which excluded eggs, thus failing to accommodate his alleged allergy to eggs; and 2) suggesting that plaintiff avoid ingesting the eggs, which advice, if followed, would effectively deprive him of the 2700 calories per day to which he is entitled under DOC policy. Am. Compl. at 4. In the second count, plaintiff alleges that defendant violated his Fourteenth Amendment right to equal protection because she provided special dietary trays to other similarly situated inmates while denying his requests for a modified diet. *Id.* at 4. He seeks a dietary menu devoid of eggs and monetary damages in the amount of $8,500. *Id.* at 7.

II.

_____In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . .'" *Miner v. Glen Falls*, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (quoting *Anderson*, 477 U.S. at 248).

To defeat a motion for summary judgment that is supported by documentary evidence and sworn affidavits, a plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Furthermore, Lawson's *pro se* status requires the Court to read his pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted). The application of this modified standard, however, "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.*

A.

Defendant advances four arguments in support of her motion for summary judgment: (1) plaintiff's Eighth Amendment claim lacks merit because he is being afforded a diet providing a sufficient number of calories; (2) defendant has no decision-making authority regarding inmate diets; (3) defendant is qualifiedly immune from suit; and (4) and the action against defendant in

7

her official capacity is barred by the Eleventh Amendment. Def.'s Mem. in Supp. of Mot. for Sum. J. at 6-12.

The Eighth Amendment protection against cruel and unusual punishment applies to the States through the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666 (1962) and enjoins them from inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. "The conditions of a prisoner's confinement can give rise to an Eighth Amendment violation." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002); *see Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To prevail, the prisoner must prove both "an objective element – that the prison officials' transgression was 'sufficiently serious' – and a subjective element – that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with deliberate indifference to inmate health or safety." *Id.* (citation omitted).

The "objective element" of an Eighth Amendment claim requires a prisoner to show that he was denied "the minimal civilized measure of life's necessities." *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The State must provide for inmates' "basic human need – e.g., food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation and internal quotation marks omitted). In addition, prisoners should not be exposed to conditions posing "an unreasonable risk of serious damage to [their] future health." *Id.* at 35. However, the Constitution does not mandate comfortable prisons. *See Rhodes*, 452 U.S. at 349. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. "Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency."

8

*Phelps*, 308 F.3d at 185.

Courts have held that deprivation of a nutritionally adequate diet is actionable under the Eighth Amendment. *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) (holding that 1000-calorie-per-day diet of food loaf might be tolerable for a few days, but not for weeks or months); *Phelps*, 308 F.3d at 186 (holding allegation of placement on restricted diet for fourteen days causing prisoner to lose 30 pounds was sufficient to survive motion to dismiss); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam) (holding that Eighth Amendment requires that prisoners be provided "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it"). Plaintiff alleges that avoiding consumption of the eggs on his meal trays, as defendant had suggested, would result in a nutritionally inadequate diet because he would fall below the 2700 calories provided by the DOH.

Defendant has provided a copy of the common fare menu. *See* Def.'s Mem. in Supp. of Mot. for Sum. J., Exhibit C. The menu includes four one-week cycles. In each week, eggs appear as a separate item in just two breakfasts and one lunch. Eggs appear as a dinner entree only once in the entire four-week cycle of menus. Plaintiff provided no evidence to indicate the total number of calories he would consume per day if he did not eat the eggs, nor has he demonstrated that his daily diet without the eggs would otherwise be so nutritionally deficient as to be actionable under the Eighth Amendment. In any case, any caloric calculation by plaintiff in an effort to prove nutritional deficiency in the absence of eggs would have to account for plaintiff's consumption of food purchased from the commissary, ranging from chili soup and corn chips to peanut butter and bagels. Yet, plaintiff has not done so.

9

In addition, plaintiff has provided no objective medical evidence to support a finding that eating the eggs would cause him to suffer serious harm or inflict pain and suffering "without penological justification," as is required to state an Eighth Amendment violation.  *See Phelps*, 308 F.3d at 187.  The only evidence contained in the record is plaintiff's bald assertion that avoiding the eggs offered on the meal trays would render his diet calorically deficient, *see* Am. Compl. at 4, and his personal statements in inmate grievance forms that when he eats eggs, he experiences hives, his throat tightens and his chest heaves.  *See* Def.'s Mem. in Supp. of Mot. for Sum. J., Exhibit B, ("Inmate Request Form," dated March 8, 2002).

Defendant has provided a copy of the departmental memorandum circulated by Dr. Blanchette and Mr. DeVeau concerning therapeutic diets for DOC.  Def.'s Mem. in Supp. of Mot. for Sum. J., Exhibit C ("Memorandum").  The Memorandum explicitly states that

> [p]atients who claim a food allergy will be told to avoid the foods, but a special diet will not be issued.  Exceptions may be allowed in the patient with documented, severe reactions (e.g. anaphylaxis, not merely 'a rash') involving foods that are often served in DOC.  Such cases will be given a special diet pass approved by the DOC Director of Clinical Services if appropriate.  It must be emphasized that any therapeutic diet ordered by a DOC physician/dentist must be deemed to be medically necessary.  An inmate request or demand for a therapeutic diet should not be granted unless it fulfills a documented medical need.

*Id.*, at 2.  While plaintiff asserts that his allergy to eggs had been documented but that his medical file containing this information has been tampered with, Am. Compl. at 4, plaintiff has not put forth any evidence to support this claim.  Plaintiff's bare allegations regarding caloric inadequacies, an egg allergy and file-tampering are insufficient to rebut defendant's evidence that she did not subject plaintiff to conditions sufficiently serious or offensive to contemporary standards of decency to satisfy the objective component of an Eighth Amendment action.

10

With respect to the subjective element of an Eighth Amendment violation, the Supreme Court has declared that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Phelps*, 308 F.3d at 186-87 (quoting *Farmer*, 511 U.S. at 837). Under this standard, there must be a genuine issue of material fact that defendant Wollenhaupt was aware of facts from which she could infer that there was a serious health risk to plaintiff surrounding his concern over eggs and alleged inadequate caloric intake and that she drew the inference.

Plaintiff has not submitted evidence to suggest that defendant knew that plaintiff's concerns about egg consumption would result in an inadequate diet and likely inflict pain and suffering. *See Phelps*, 308 F.3d at 187. There is no evidence in plaintiff's medical file that would have alerted defendant about allergies or any other severe health concerns relating to eggs. Furthermore, the Court has searched through the documentation plaintiff provided in his earlier requests and motions and has found no documentation of any hospitalization or treatment of plaintiff as a result of egg consumption which could have apprised defendant of a serious risk to plaintiff's health or safety. Finally, there is no evidence that plaintiff ever sought a medical diagnosis of his alleged allergy to eggs, a prerequisite for a modified diet, even though plaintiff was repeatedly informed of the need to have a prison physician approve his request for a modified diet and even though plaintiff was free to seek an appointment with a prison physician for the purposes of diagnosing his alleged allergy and seeking a modified diet. In short, there is no factual basis on which a jury could reasonably find that defendant, a prison nurse, knew of or

11

disregarded an excessive risk to plaintiff's health or safety. As there exist no material facts that would support finding that either the subjective or the objective element of an Eighth Amendment violation is met in this case, the Court grants defendant summary judgment on plaintiff's Eighth Amendment claim.

## B.

Plaintiff also alleges that defendant violated his Fourteenth Amendment right to equal protection because she provided modified diets to other similarly situated inmates while denying plaintiff the same. "The equal protection clause directs state actors to treat similarly situated people alike." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995); *see Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). An equal protection claims requires proof of "purposeful discrimination, directed at an identifiable or suspect class." *Id.*; *see McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *see also Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457-58 (1988). There is no reasonable basis on which a jury could determine from the facts in this case that defendant purposefully discriminated against plaintiff or that plaintiff belonged to an identifiable or suspect class. Defendant has submitted evidence, which the Court must accept as true, showing that, as a prison nurse, she does not make dietary decisions or possess the authority to order a modified diet. That authority resides in others. Thus, defendant could not possibly have engaged in the discriminatory conduct alleged. Therefore, Defendant is entitled to summary judgment on plaintiff's Fourteenth Amendment claim.

## III.

As is apparent from his grievances, plaintiff is concerned about consuming eggs and concerned about his nutrition in the absence of the calories provided by those eggs. However

one may sympathize with those concerns, plaintiff possesses the means for addressing them: He is free to apply for a "sick call" to meet with a staff physician to discuss his health concerns and if his allergic reactions are severe, the physician can request that a modified diet be approved by Dr. Blanchette. To date, however, it does not appear that plaintiff has availed himself of this process. To the extent plaintiff remains concerned about his health, he should pursue the process that DOC has created to address such health concerns.

For the foregoing reasons, defendant's Motion for Summary Judgment [doc. #28] is GRANTED. The Clerk is directed to enter judgment in favor of the defendant and close this case.

IT IS SO ORDERED.

/s/          Mark R. Kravitz
_____          U.S.D.J.

Dated at New Haven, Connecticut: February 23, 2004.

13